# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **JULIE RENEE WENTZEK**, | Case No. 3:12-cv-01687-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, | |
| Commissioner of Social Security, | |
| Defendant. | |

Lisa R.J. Porter, KP Law LLC, 16200 S.W. Pacific Highway, Suite H-280, Portland, OR 97224. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lars J. Nelson, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge**.

Julie Rene Wentzek seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is not based on substantial evidence, the decision is REVERSED and this case is REMANDED for further proceedings.

## BACKGROUND

### A. The Application

Ms. Wentzek protectively filed an application for DIB on November 16, 2004, alleging disability beginning on October 10, 2003, due to narcolepsy, depression, anxiety, chronic fatigue syndrome, fibromyalgia, post-traumatic stress disorder ("PTSD"), mitral valve prolapse with regurgitation, and back pain. Tr. 184, 197-98. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 148-51. After an administrative hearing, held on February 20, 2008, the ALJ found Ms. Wentzek to be not disabled. Tr. 33-40, 639-79. The Appeals Council accepted Ms. Wentzek's request for review; ultimately, the Appeals Council vacated the ALJ's 2008 decision and remanded the matter for further proceedings ("Remand Order"). Tr. 25-27.

On May 4, 2011, a second administrative hearing was held, at which Ms. Wentzek was present and testified, as did a vocational expert ("VE"). Tr. 680-716. On May 16, 2011, the ALJ issued a second decision finding Ms. Wentzek not disabled. Tr. 15-23. The Appeals Council denied review, making the ALJ's 2011 decision the final decision of the Commissioner. Tr. 5-7. Ms. Wentzek now seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled" within the meaning of the Social Security Act ("Act"). *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must

evaluate medical and other relevant evidence to assess and determine the claimant's residual functional capacity ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ performed the sequential analysis in his May 16, 2011 decision. Tr. 15-23. At step one, the ALJ found that Ms. Wentzek had not engaged in substantial gainful activity from the alleged onset date, December 10, 2003, through the date last insured, December 31, 2008. Tr. 17. At step two, the ALJ concluded that Ms. Wentzek's narcolepsy, mild degenerative disc disease of the lumbar spine, anxiety disorder, depressive disorder, and alcohol abuse in remission were severe impairments. *Id.* At step three, the ALJ ruled that Ms. Wentzek did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. Tr. 16-17.

The ALJ next assessed Ms. Wentzek's RFC. The ALJ found that Ms. Wentzek retained the capacity to perform light work, but with the following limitations: "occasional climbing of ramps and stairs"; occasional stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no balancing; and no concentrated exposure to extreme heat or hazards. Tr. 18-22. In addition, she "was limited to unskilled, simple, routine, repetitive work." *Id.* At step four, the ALJ determined that Ms. Wentzek's RFC rendered her unable to perform her past relevant work. Tr. 22. At step five, based on the VE's testimony, the ALJ concluded that Ms. Wentzek could perform jobs that exist in significant numbers in the national economy. Tr. 22-23. Thus, the ALJ found Ms. Wentzek not disabled under the Act. Tr. 23.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*,

554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (internal quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record and the court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Ms. Wentzek argues that the ALJ erred by: (1) not obtaining evidence from a medical expert, in violation of the Appeals Council's Remand Order; (2) improperly rejecting her subjective symptom testimony; (3) improperly discrediting the medical opinion evidence; (4) inadequately developing the record; and (5) failing to include all of her limitations in the RFC, such that the ALJ's step five finding was invalid.[1]

---

[1] Ms. Wentzek's counsel often neglected to adequately raise or sufficiently brief the ALJ's alleged errors; in fact, she seemingly acknowledges this shortcoming. *See* Pl.'s Opening Br. 28-29. For instance, Ms. Wentzek's counsel asserts that the ALJ erred because Ms. Wentzek "clearly meets listing 4.12." *Id.* at 28. However, Ms. Wentzek's counsel did not provide any argument or evidence in support of this assertion. *Id.* An independent review of the record

**A. Compliance with the Remand Order**

Ms. Wentzek first argues that the ALJ committed by reversible error by failing to comply with the Appeals Council's Remand Order. A remand order from the Appeals Council may include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. *See* 20 C.F.R. § 404.977(a); *see also* 20 C.F.R. § 404.983. The ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b).

In this case, the Appeals Council held that the ALJ's 2008 decision was erroneous in several respects, particularly in its assessment of Ms. Wentzek's mental impairments. Tr. 25. Accordingly, the Appeals Council reversed the ALJ's 2008 decision and remanded the case, in relevant part, to "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments and any work-related limitations imposed by these impairments." Tr. 26.

On remand, the ALJ did not consult a medical expert or otherwise acquire any additional evidence regarding Ms. Wentzek's mental impairments, finding instead that a "psychological evaluation done in [July] 2008 is [the] best evidence of the claimant's mental status during the period she was insured." Tr. 15. Nevertheless, the ALJ reassessed the five-step sequential process, including Ms. Wentzek's RFC and the hypothetical questions posed to the VE, and found that she was not disabled. Tr. 15-23. As such, Ms. Wentzek is correct that the ALJ erred

---

reveals that listing 4.12, which pertains to "peripheral arterial disease," is not met in the case at bar. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 4.12. In any event, because the claimant bears the initial burden of proof, the court need "not consider matters on appeal that are not specifically and distinctly argued." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (citation and internal quotations omitted).

by not complying with the Remand Order. Nevertheless, failure to follow a remand order is not a proper basis for the reviewing court to reverse or remand the ALJ's final decision regarding a claimant's disability. *See Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1136–1138 (9th Cir. 2011).

Rather, "[t]he ALJ's errors are relevant only as they affect that analysis on the merits. A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* at 1138. Thus, irrespective of whether the ALJ complied with the Remand Order, the issue before this Court is whether the ALJ's decision is based on substantial evidence and is free of legal error. *Id.*; *see also Wick v. Astrue*, 2009 WL 2393106, *2-15 (D.Or. July 31, 2009) (ALJ failed to comply with a remand order but reversal was only warranted to the extent that the court found harmful error in regard to the other issues expressly raised and briefed by the claimant) (citing *Sullivan v. Hudson*, 490 U.S. 877, 885-86 (1989)); *Hernandez-Devereaux v. Astrue*, 614 F.Supp.2d 1125, 1134 (D.Or. 2009) ("to the extent that the ALJ here failed to properly follow the [remand] instructions, she committed reversible error unless the errors were harmless, i.e., they would not have affected the ALJ's ultimate conclusions") (citation omitted). Accordingly, the Court will review Ms. Wentzek's other allegations of error in order to determine whether the ALJ's failure to follow the Remand Order warrants reversal.

## B. Credibility of Ms. Wentzek's Testimony

Ms. Wentzek next contends that the ALJ did not provide a clear and convincing reason for rejecting her subjective symptom testimony regarding the extent of her impairments. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*,

572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)) (internal quotations omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Applying the first step of the credibility framework, the ALJ found that Ms. Wentzek's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19. In applying the second step, however, the ALJ found Ms. Wentzek's "statements concerning intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* In support of this finding, the ALJ reasoned that Ms. Wentzek's "daily activities are not suggestive of debilitating symptoms."[2] Tr. 21.

At the hearing, Ms. Wentzek testified that she spends her days taking care of her son, who suffers from emotional problems, and her household. Tr. 687-99; *see also* Tr. 221-44, 307-

---

[2] The ALJ conflated his analysis of Ms. Wentzek's credibility with his evaluation of the medical opinion evidence. *See* Tr. 19-22. As such, the ALJ's assessment of Ms. Wentzek's credibility was terse and did not specifically identify which subjective symptom testimony was not credible. For this reason alone, the ALJ's credibility determination was erroneous. *See Dodrill*, 12 F.3d at 918; *Orteza*, 50 F.3d at 750.

14. She explained that she is unable to work due to stress, anxiety, pain and fatigue. Tr. 691, 702-05; *see also* Tr. 221-44, 307-14. Specifically, Ms. Wentzek explained that, while she continues to perform certain household chores, it takes her all day, with numerous breaks, due to her pain and fatigue. Tr. 221-22, 255-61, 303-05; *see also* Tr. 466 (Ms. Wentzek "voiced having to constantly experience an overwhelming urge to lie down and not wake up. She added that she had to force herself to attend to her responsibilities"). Ms. Wentzek also described difficulty with memory and focus, to the point that she was unable adequately to learn her son's sixth grade homeschool curriculum. Tr. 706-07.

According to the ALJ, Ms. Wentzek's activities of daily living belied her subjective symptom testimony. An ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). Thus, the issue in this case is whether substantial evidence supports the ALJ's determination that Ms. Wentzek's activities of daily living are inconsistent with her prior statements or transferable to the workplace. Here, the ALJ found Ms. Wentzek not credible because she "babysat her grandchild on a regular basis, maintained her home[,] did yard work[,] homeschooled her son with special needs for two years [in 2009 and 2010,] [and] [t]reatment records from March 2010 reflect that she was riding an ATV." Tr. 21.

Initially, the fact that Ms. Wentzek homeschooled her son or rode an ATV, after the date last insured, does not necessarily indicate that Ms. Wentzek was being less than candid regarding her limitations during the relevant time period. Regardless, in evaluating plaintiff's credibility, the ALJ impermissibly mischaracterized the record. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the

content and tone of the record" and, thus, did not support an adverse credibility finding). For example, the record reveals that Ms. Wentzek's alleged impairments precluded her from successfully homeschooling her son; her ability to focus, persist, and remember the curriculum was so limited that Ms. Wentzek was "unable to do the proper work with [her son]," such that he was required to return to public school and repeat the sixth grade. Tr. 706-07. In addition, while Ms. Wentzek babysat her grandson for two hours, three days a week, in 2004, she indicated that she often received help in so doing. Tr. 221-22, 228, 246. In any event, by 2005, her condition had deteriorated such that she was no longer able to provide as much care to her grandson. Tr. 197-201, 307-08.

Moreover, Ms. Wentzek has been consistent in her testimony that, although she does perform household chores, such as cleaning, laundry, and cooking, such tasks are difficult for her and punctuated by frequent rests, such that they often go uncompleted. *See, e.g.*, Tr. 221-28, 255-58, 260-61, 303-05, 307-10, 317, 655-56. Ms. Wentzek has also been consistent in her statements regarding the cyclical nature of her pain, fatigue, and mental impairments. *See, e.g.*, Tr. 256, 259-60, 262, 309, 656.  In other words, Ms. Wentzek reported that she has good days and bad days. *Id.* Accordingly, while the record evidence is scarce concerning this incident, the fact that Ms. Wentzek rode an ATV once in 2010 is not inherently inconsistent with her subjective symptom statements and therefore does not adversely affect her credibility. Tr. 605-06. Finally, contrary to the ALJ's assertion, there is no evidence in the record indicating that Ms. Wentzek performed yard work or any other strenuous labor during the relevant time period.[3] Tr. 21; *see also* Tr. 223, 256, 261.

---

[3] The record reflects that, in 2011, after Ms. Wentzek and her husband divorced, she became responsible for the yard work. *See* Tr. 381.

In sum, activities such as Ms. Wentzek's – i.e. occasionally babysitting with help, a failed attempt to homeschool her child, and taking a full day, with frequent breaks, to engage in relatively limited chores – neither "indicat[e] capacities that are transferable to a work setting" nor "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113; *see also Sprague v. Colvin*, 2013 WL 2318844, *11-13 (D.Or. May 28, 2013) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Thus, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, to reject Ms. Wentzek's statements regarding the extent of her limitations. The ALJ's credibility finding is reversed.

## C. Medical Evidence

Ms. Wentzek next argues that the ALJ improperly discredited Dr. Parsons' opinion[4] and, further, failed to consider Ms. Wentzek's Global Assessment of Functioning ("GAF") scores.

### i. Dr. Parsons

The Ninth Circuit distinguishes between the opinions of three types of acceptable medical opinions: treating physicians, examining physicians, and non-examining doctors. The opinions of treating doctors are generally accorded greater weight than the opinions of non-treating doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502

---

[4] In discussing the weight afforded to the medical opinion evidence, Ms. Wentzek's counsel also refers to the opinion of Dr. Suckow. *See* Pl.'s Opening Br. 25. Yet there is nothing in the record indicating that Dr. Suckow provided treatment to Ms. Wentzek. Accordingly, the Court declines to address the weight afforded to any doctor other than Dr. Parsons. *See Carmickle*, 533 F.3d at 1161 n.2.

(9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining doctor over that of a non-examining doctor. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating doctor, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502 at 506 (9th Cir. 1990). If the opinion of an examining doctor is contradicted by another doctor's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining doctor's opinion. *Lester*, 81 F.3d at 830.

On December 31, 2007, approximately four months after he began providing treatment, Dr. Parsons, a medical doctor, wrote a letter in support of Ms. Wentzek's DIB application. Tr. 546. Dr. Parsons stated: "In addition to several physical medical issues, [Ms. Wentzek] suffers from severe anxiety and depression . . . Due to her conditions, she has not been able to work." *Id.*

The ALJ accorded Dr. Parsons' opinion "little weight" because it "involves vocational issues of which he has no expertise [and] [h]e provides no specific functional limitations." Tr. 20. The ALJ may reject an opinion as "conclusory" if it includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Likewise, an ALJ may discredit a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly rejected a medical opinion that failed to explain the extent or significance of a condition).

A review of Dr. Parsons' brief and conclusory opinion letter itself confirms the absence of any named mental or physical limitations, such as the inability to concentrate or to lift, stoop,

walk, or stand. In fact, the letter states only Ms. Wentzek's diagnoses and then concludes that

"she has not been able to work." Tr. 546. Therefore, the ALJ provided a clear and convincing

reason, supported by substantial evidence, for rejecting the opinion of Dr. Parsons.

### ii. GAF Scores

"The GAF scale is a tool for reporting the clinician's judgment of the individual's

overall level of functioning; accordingly, a GAF score reflects a snapshot of a claimant's

presentation on the day of the examination." *Davis v. Astrue*, 2012 WL 4005553, *9 (D.Or.

June 12), *adopted by* 2012 WL 3614310 (D.Or. Aug. 21, 2012) (quoting *Chapman v. Astrue,*

2009 WL 3046025, *4 (D.Or. July 30, 2009); and American Psychiatric Ass'n, Diagnostic and

Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM–IV")) (internal quotations

omitted). Accordingly, contrary to Ms. Wentzek's assertion, a "GAF score does not determine

disability." *Gardner v. Astrue*, 2009 WL 1505303, *10 (D.Or. May 27, 2009). "Rather, the GAF

assessment is but one element of a medical provider's conclusion." *Boyer v. Colvin*, 2013

WL 3333060, *8 (D.Or. July 1, 2013).

As such, the fact that a licensed social worker, who is considered an "other source" under

the Social Security Regulations, assessed Ms. Wentzek with a moderately low GAF score during

the relevant time period does not automatically entitle her to benefits. *See* Tr. 320-22 (GAF score

of 53 assessed by Linda Tombaugh, L.C.S.W.); *see also* Tr. 498-99 (GAF score of 51 assessed

by Theresa Ann Dudley, L.C.S.W., M.S.W.).[5] Instead, the dispositive inquiry is whether the ALJ

properly evaluated the medical evidence.[6] *See Sampson v. Astrue*, 441 Fed.Appx. 545,

---

[5]  A GAF score between 51 and 60 indicates "moderate" symptoms, such as flat affect or
occasional panic attacks, or "moderate" difficulty in social, occupational, or school functioning,
such as having few friends or conflicts with peers or co-workers.  DSM-IV at 30, 34.

[6] The Court notes that, in March 2011, Dr. Auzins, Ph.D., completed a "Mental
Impairment Questionnaire," in which he opined that Ms. Wentzek's current GAF score was 50.

546-47 (9th Cir. 2011) ("[b]ecause the ALJ properly rejected the treating physicians' opinions, any error in rejecting the Global Assessment of Function (GAF) scores was harmless, since the scores alone would not establish disability").

Although the record here contains treatment notes and diagnoses from Ms. Dudley and Ms. Tombaugh, only Dr. Wicher and Dr. Rethinger rendered an opinion on the severity of Ms. Wentzek's alleged mental impairments and their impact on her ability to perform work-related tasks. Tr. 471-87, 556-61. Ms. Wentzek, however, does not now challenge the ALJ's assessment of that evidence.[7] Regardless, the ALJ did not expressly discuss the two mental reports from these licensed social workers. Such an omission was not erroneous in this case because this evidence was neither significant nor probative for two reasons. *See, e.g.*, *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (the Commissioner "need not discuss *all* evidence presented to her . . . she must [only] explain why significant probative evidence has been rejected") (citation and internal quotations omitted); *see also Howard ex rel Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence") (citations and internal quotations omitted). First, both reports were based on one-time, initial diagnostic interviews. Tr.

_____

Tr. 581. In addition, in January 2011, Dr. O'Reilly, Ph.D., assessed Ms. Wentzek with a GAF score of 45. Tr. 613. The reports of Drs. Auzins and O'Reilly are the only evidence in the record from an acceptable medical source regarding Ms. Wentzek's GAF. Both assessments, however, were completed more than two years after the date last insured and, further, Dr. Auzins expressly stated that Ms. Wentzek's allegedly disabling conditions have merely existed for "approx. [the] last 6 mos." Tr. 587. Therefore, Dr. Auzins' and Dr. O'Reilly's 2011 GAF evaluations are not probative as to Ms. Wentzek's functioning during the relevant time period. In fact, the ALJ gave Dr. Auzins' opinion "little weight" for this reason and Ms. Wentzek does not now challenge that finding. Tr. 21.

[7] Nonetheless, the Court acknowledges Ms. Wentzek's argument that Dr. Wicher "used an impermissible test," the MMPI-II, to assess whether she was malingering. Pl.'s Opening Br. 22-23. The Court declines to address this matter further, as it is not determinative, but notes briefly that there is no support in the record for the contention that Dr. Wicher administered the MPPI-II to address issues of credibility or malingering.

320-22, 498-99. Second, neither report describes any functional limitations; rather, both

counselors' chart notes merely reflect Ms. Wentzek's statements concerning her relevant

background information. *Id.* As such, fully crediting this evidence would not result in a more

restrictive RFC.

Thus, even assuming the ALJ erred by neglecting to discuss Ms. Dudley's and

Ms. Tombaugh's reports, including their GAF assessments, such an error was harmless. *See*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's

decision for harmless error, which exists when it is clear from the record that the ALJ's error was

inconsequential to the ultimate nondisability determination") (citation and internal quotations

omitted); *see also Molina*, 674 F.3d at 1118-19.[8] As such, the ALJ's assessment of the medical

evidence is affirmed.

**D. Failure to Develop the Record**

Ms. Wentzek also asserts that the ALJ erroneously failed to develop the record in regard

to her alleged attention deficit hyperactivity disorder ("ADHD"), somatoform disorder, and post-

traumatic stress disorder ("PTSD").

It is the claimant's burden to prove the existence of an impairment. *Marci v. Chater*, 93

F.3d 540, 543-45 (9th Cir. 1996); *see also* 42 U.S.C. § 423(d)(5). Yet, in certain limited

circumstances, the ALJ has an independent duty to develop the record. *Higbee v. Sullivan*, 975

---

[8] Further, Ms. Wentzek's counsel failed to provide any argument regarding this medical evidence, beyond concluding that "[p]laintiff's GAF score of 50 over the time in 2005 . . . is precisely the level at which . . . courts consider indicative of disability." Pl.'s Opening Br. 23. As such, like the medical reports themselves, Ms. Wentzek does not articulate what further functional limitations were required in order to accommodate for her GAF scores. *Id.*; *see also* Pl.'s Reply Br. 4-5. Ms. Wentzek therefore failed to carry her burden in establishing that the alleged error was harmful. *See McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (as amended) ("[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm").

F.2d 558, 561 (9th Cir. 1992). The ALJ's "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

Moreover, as the Commissioner correctly notes, a "diagnosis alone cannot establish disability." Def.'s Resp. Br. 8. Instead, only "acceptable medical sources" can diagnose and establish that a medical impairment exists; such findings must be based upon acceptable medical evidence, such as "signs, symptoms, and laboratory findings." *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005); 20 C.F.R. §§ 404.1508, 404.1513(a); *see also* SSR 06-03p, *available at* 2006 WL 2329939. Accordingly, "under no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4p, *available at* 1996 WL 374187.

### i. Attention Deficit Hyperactivity Disorder

The only record evidence regarding Ms. Wentzek's ADHD are her own self-reports. *Compare* Tr. 552 (Ms. Wentzek stating that she takes Concerta to treat her ADHD and narcolepsy), *with* Tr. 550 (Dr. Parsons' chart notes indicating that he prescribed Concerta only to treat Ms. Wentzek's narcolepsy). In any event, the record does not include an affirmative diagnosis of ADHD. There is also no acceptable medical evidence regarding Ms. Wentzek's ADHD. Moreover, Ms. Wentzek does not allege, and there is no indication in the record, that she suffers from any functional limitations as a result of her ADHD or that this alleged impairment is inadequately controlled with medication; in fact, Ms. Wentzek never sought treatment for this condition. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling"). Thus, the ALJ did not err by failing to develop the record in this regard.

### ii. Somatoform Disorder

The record before the Court contains a single reference to Ms. Wentzek's alleged somatoform disorder. In January 2011, Dr. O'Reilly noted that Ms. Wentzek had a history of "somatic complaints." Tr. 613. Notably, neither Dr. O'Reilly, nor any medical source, diagnosed Ms. Wentzek with a somatoform disorder and, accordingly, she did not seek treatment for this alleged impairment. *Id.*; *see also* DSM-IV at 485. In other words, the record does not reflect that a somatoform disorder was suspected and, in any event, Dr. O'Reilly's assessment was prepared more than two years after the date last insured. More importantly, there is no acceptable medical evidence in the record, such as clinical or laboratory findings, suggesting that Ms. Wentzek suffered from a somatoform disorder. *Id.* Therefore, the ALJ did not err by failing to more fully develop the record as to this alleged impairment.

### iii. Post-Traumatic Stress Disorder

The record is replete with references to Ms. Wentzek's PTSD during the relevant time period. *See, e.g.*, Tr. 469 (Dr. Stuckey reporting that Ms. Wentzek "presents with symptoms of PTSD such as nightmares related to her abuse and extensive gaps in her remote memory," listing PTSD as a "[r]ule out" possibility), 497-99 (Ms. Dudley diagnosing Ms. Wentzek with PTSD), 546 (Dr. Parsons noting that Ms. Wentzek "has been diagnosed" with PTSD), 548 (Dr. Parsons listing PTSD as Ms. Wentzek's Axis I diagnosis and reporting that she suffers from "[l]ikely PTSD with chronic and depressive anxiety and symptoms"), 550 (Dr. Parsons diagnosing Ms. Wentzek with PTSD); *see also* Tr. 581-88. Further, when taken as a whole, the record indicates that this impairment significantly limits Ms. Wentzek's ability to do basic work activities. *Id.* Yet there was no evidence before the ALJ, and none in the record, regarding how Ms. Wentzek's PTSD limits her ability to work or exacerbates her other alleged impairments. As

a result, the ALJ neither discussed this alleged impairment at step two nor considered it in formulating Ms. Wentzek's RFC. *See Harrison v. Astrue*, 2011 WL 2619504, *7 (D.Or. July 1, 2011) ("[o]missions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two") (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)). Additionally, while not dispositive, the Court notes that the lack of evidence concerning Ms. Wentzek's mental impairments, and how they interact, is, in part, why the Appeals Council previously remanded this case to obtain evidence from a medical expert. *See* Tr. 25-26. As such, because there is no evidence concerning how Ms. Wentzek's PTSD limits her ability to work or interfaces with her other alleged impairments, the Court finds the record inadequate.

In sum, Ms. Wentzek failed to introduce any acceptable medical evidence of her somatoform disorder or ADHD. Ms. Wentzek's failure to carry her burden of proof regarding these conditions does not equate to an inadequacy or ambiguity in the record. Nonetheless, the record is insufficient regarding the effects of Ms. Wentzek's PTSD, if different from those relating to her anxiety and depression, and its interaction with her other mental impairments. Thus, the ALJ's decision is reversed as to this issue.

**E. The ALJ's RFC and Step Five Finding**

Finally, Ms. Wentzek argues that the ALJ committed reversible error by failing to include all of her impairments in the RFC. Specifically, Ms. Wentzek contends that the ALJ was required to account for her PTSD, ADHD, and somatoform disorder, as well as the limitations outlined in Dr. Parsons' letter. In addition, Ms. Wentzek asserts that the ALJ "failed to include the DDS examining and non-examining medical examiners' findings that [she] had reduced

concentration[,] pace and persistent abilities are moderate impairments when working with coworkers, supervisors and [the] public." Pl.'s Opening Br. 27.

The RFC is the most that a claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ evaluates "all of the relevant medical and other evidence," as well as a claimant's testimony, in making this assessment. SSR 96–8p, *available at* 1996 WL 374184; 20 C.F.R. § 404.1545(a)(1); *see also Robbins*, 466 F.3d at 883. Limitations supported by substantial evidence in the record must be incorporated into the RFC. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1164–65 (9th Cir. 2001).

In this case, the ALJ did not provide legally sufficient reasons for discrediting Ms. Wentzek's subjective symptom testimony and, moreover, failed to develop the record in regard to her PTSD. Further, Ms. Wentzek is correct that, despite giving substantial weight to Dr. Wicher and the State Agency consultive sources, the ALJ failed to include a restriction for her difficulty with social functioning. *Compare* Tr. 21-22 (ALJ's opinion), *with* Tr. 485-87 (Dr. Rethinger's mental RFC), *and* Tr. 552-60 (Dr. Wicher's mental RFC). Because the RFC does not account for these potential additional limitations, the RFC assessment is erroneous. Similarly, the hypothetical posed to the VE was also erroneous. Accordingly, the ALJ's RFC and step five finding are reversed.

**F. Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by

further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss*, 635 F.3d at 1138–39 (citation omitted). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871 876 (9th Cir. 2003) (citation omitted). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

As discussed above, the ALJ erred in discrediting Ms. Wentzek's statements, not developing the record in regard to her PTSD, and failing to include all of the limitations supported by substantial evidence in the RFC and step five finding. There are, however, issues that must be resolved before benefits may be awarded. It is not clear from the record what effect the inclusion of the erroneously omitted limitations will have on Mr. Wentzek's capacity to work. Additionally, the record would benefit from further development of Ms. Wentzek's PTSD, especially as it relates to and interacts with her other mental impairments. The VE's testimony touches on, but does not directly address, these matters. *See* Tr. 713-15. Accordingly, this case is remanded for further proceedings in order to reassess plaintiff's credibility and to obtain

evidence from a medical expert regarding Ms. Wentzek's PTSD and other mental impairments. The ALJ should then consider whether that evidence requires a reassessment of the medical record or a new RFC; the ALJ must obtain additional VE testimony in light of any new RFC evaluation.

## CONCLUSION

The Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

DATED this 3rd day of September, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge